IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

CHRISTIE LEIGH-ROBINSON    )
ANDERSON,                  )
                           )
        Plaintiff,         )
                           )          Case No. 5:15-cv-836-TMP
    vs.                    )
                           )
CAROLYN W. COLVIN,         )
Acting Commissioner of Social )
Security,                  )
                           )
        Defendant.         )

## MEMORANDUM OPINION

### Introduction

The plaintiff, Christie Leigh-Robinson Anderson, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB").  Ms. Anderson timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  The parties have consented to the full dispositive jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c).

Ms. Anderson was 45 years old at the time of the Administrative Law Judge's ("ALJ") decision, and she has an associates degree in nursing. (Tr. at 28).  Her past

work experiences include employment as a registered nurse in both hospitals and clinical offices.   (Tr. at 58, 72).   Ms. Anderson claims that she became disabled on September 25, 2008, due to cervical arthritis, shortness of breath, and a hiatal hernia. (Tr. at 204).   The medical evidence submitted to the ALJ indicates that Ms. Anderson has cervical and lumbar degenerative disc disease ("DDD"), left shoulder impingement, fibromyalgia, gastroesophageal reflux disease ("GERD") related to a hiatal hernia, depression, and anxiety.   (Tr. at 47-64).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.   *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).   The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   If she is, the claimant is not disabled and the evaluation stops. *Id*. If she is not, the Commissioner next considers the effect of all of the claimant's physical and mental impairments combined.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.   *Id*.   To be "severe," an impairment must cause a significant limitation on the claimant's ability to perform basic work tasks.

The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step

five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Anderson has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of her decision. (Tr. at 60). She first determined that Ms. Anderson met the insured status requirements of the Social Security Act through September 30, 2014. (Tr. at 52). She next found that she has not engaged in substantial gainful activity since September 25, 2008, the alleged onset date. *Id.* According to the ALJ, the plaintiff's degenerative disc disease in the cervical and lumbar spines, fibromyalgia, left shoulder impingement, and chronic pain are considered "severe" based on the requirements set forth in the regulations. *Id.* She further determined that Ms. Anderson had nonsevere impairments of GERD, related to a hiatal hernia, and depression. However, she found that these

impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. at 53).  The ALJ determined that Ms. Anderson's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible" (Tr. at 58), and she determined that she has the following residual functional capacity: to perform light work except that she can lift only 20 pounds occasionally and 10 pounds frequently; can occasionally reach overhead with her left upper extremity; can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, but can never climb ladders, ropes, or scaffolds.  (Tr. at 54).

Moving on to the fourth step of the analysis, the ALJ concluded that Ms. Anderson is unable to perform her past relevant work as a nurse.  (Tr. at 58).  The ALJ considered the testimony of a vocational expert ("VE"), and determined that, considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including photocopy operator, mail sorter, and product marker.  (Tr. at 59). The ALJ concluded her findings by stating that Plaintiff is not disabled under Section 1520(g) of the Social Security Act.  (Tr. at 60).

## Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.   The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.   *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004), quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.   *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.   *Id.*   "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"   *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986)

(Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.   *Miles*, 84 F.3d at 1400.   No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal.   *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## Discussion

Ms. Anderson alleges that the ALJ's decision should be reversed and remanded because, as she asserts: (1) the ALJ failed to properly evaluate her fibromyalgia under the Eleventh Circuit Court of Appeals' pain standard in that (a) the facts support a finding of disability due to fibromyalgia, (b) the ALJ's decision regarding the claimant's credibility is not supported by substantial evidence, and (c) the ALJ improperly disregarded the opinions of treating physicians in favor of a non-treating physician; (2) the ALJ improperly applied the Eleventh Circuit Court of

Appeals' pain standard;[1] (3) the ALJ failed to find that the plaintiff's cervical and lumbar impairments met or equaled Listing 1.04, Disorders of the Spine; and (4) the Appeals Council failed to properly consider the new evidence submitted, which would have required remand.   (Doc. 16).

A brief discussion of the plaintiff's medical history is necessary in order to put the ALJ's decision into context.   Ms. Anderson was involved in a car accident when she was a teenager, after which she began to have a "stiff neck" and headaches.   She went on to become a registered nurse, and worked as a nurse from 1997 until 2008. She sought treatment for neck and back pain as early as 2004, and was treated by an orthopedic surgeon, Matthew Berke, with trigger point injections on several occasions.   He noted that she had a history of chronic neck and low back pain, and that she had been given epidural blocks in the past.   Her doctor recommended cervical traction and physical therapy as well, which she did not pursue at that time.[2]

---

[1]      A diagnosis of fibromyalgia generally is not based upon any "medical or laboratory signs," but is most often derived from a doctor's analysis of the patient's "described symptoms." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005), citing *Stewart v. Apfel*, 245 F.3d 783 (11th Cir. 2000).   In this case, the ALJ accepted the diagnosis of fibromyalgia, and rated that impairment as severe.   Accordingly, the claim set forth above as 1(a) is without merit.   Although plaintiff's counsel set out separate arguments in his brief for the issues listed herein as issues 1(b) and 2, the court finds that the issues are interrelated and essentially turn on the issue of whether the ALJ's finding that the plaintiff's reports of pain were not entirely credible was based upon substantial evidence.

[2]      One doctor's notation indicated that she did not use the traction device because it

In 2006, Ms. Anderson had an MRI that revealed some disc degeneration in the lumbar region of her back. In 2008, more disc bulges were discovered in her cervical spine. She was treated with epidural steroid injections, anti-inflammatories, muscle relaxants, massages, acupuncture, and, eventually, narcotic pain medication, including oxycontin. She was referred to a pain clinic in 2008, and was seen regularly—often twice a month. Over the course of the next several years, Ms. Anderson consistently reported to multiple doctors a pain in her neck and back that was "constant," that worsened with activity, that was aggravated by sitting and standing, and that was made slightly better by medication and heat. Her reported pain level was never lower than 4 (on a scale of 1 to 10), and once as high as 10. Most often, she reported that the pain was about a level 7 after the effects of medication. She consistently reported that her pain was continuous and aching, and sometimes radiated down her leg or shoulder. While she often reported that medication made the pain "better" or relieved the pain "somewhat," she also frequently reported that "any activity at all" aggravated the pain. She specifically complained on multiple occasions that riding in a car made her pain much worse. Dr. Shikhtholth, who treated Ms. Anderson regularly at the pain management clinic,

aggravated another condition, TMJ.

reported that her daily activities had been "severely" or "moderately" limited due to the pain. At the same time, his notes consistently stated that riding in a car, sitting, walking, or "any activity" worsened her pain. In the hundreds of pages of medical records submitted, there is no suggestion that any doctor suspected that Ms. Anderson was malingering, drug seeking, or exaggerating her pain or her limitations.

As a requirement for seeking Social Security disability benefits, Ms. Anderson had to complete a function report. Her average day was described as eating breakfast in bed, taking her morning medication, watching news programs, and brushing her teeth and hair. She reported that, when her pain is "severe," she returns to bed after brushing her hair and teeth. If her pain allows, she will do light housework or shop for "a few" groceries. She will microwave leftovers for lunch, and then usually will return to bed. Her husband prepares all other meals and does all other housework or yardwork. She will feed her small dog and "occasionally" take him for a "slow, short walk." She needs her husband's help with some of her dressing and bathing needs. When she does report giving some assistance with housework, it is only "light duty," for a "short span of time," punctuated with rest periods. Although she reported hobbies of reading, researching topics on the

internet, watching TV, and scrapbooking, she noted that she "can't do too much at a time because of looking down [which] increases the strain on my neck." There are no reports that Ms. Anderson's descriptions of her daily activities were inaccurate or incomplete. A report filled out by her husband is entirely consistent with hers, and notes that he helps her take care of the house, yard, dog, and shopping.

### 1. *Proper Legal Standard Regarding Credibility*

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if she articulates explicit and adequate reasons for doing so.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection" which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ specifically stated that plaintiff's severe fibromyalgia, cervical degenerative disc disease, lumbar degenerative disc disease, left shoulder impairment and chronic pain were severe impairments. She further asserted that she considered the plaintiff's nonsevere impairments "singly and in combinations" with her severe impairments, and found they were not disabling. The ALJ's decision that the plaintiff was not disabled rested primarily upon a negative assessment of the plaintiff's credibility and a review of the medical records and

function reports. This court finds that the ALJ's assessment of plaintiff's own reports and the medical evidence was cursory, selective, or taken out of context.

The ALJ, on the one hand, describes Ms. Anderson's long medical history as worsening steadily from 2004 until the time of her hearing. She also describes treatment that became more frequent and more intensive, and acknowledges that the treatments were of limited efficacy. (Tr. at 55). To support the negative credibility assessment, the ALJ refers to the following: (1) a "vacation;" (2) reports of fluctuating pain levels during some doctor's visits; (3) the plaintiff's concession that she "opted not to pursue" every available treatment in 2004-06; (4) descriptions of daily activities that include feeding and walking the dog, "reading, researching on the internet, and scrapbooking;" and (5) a detailed and complete function report.

First, the court looks to the ALJ's determination that the plaintiff took a "vacation to Florida in 2008." The record of that excursion simply notes that the plaintiff reported additional pain after a "trip to Florida," which is entirely consistent with her repeated allegations that riding in a car made her pain much worse. The ALJ assumes, apparently based on the mere fact that Florida is a popular vacation destination, that the trip was a vacation, and suggests that taking a "vacation" in 2008 makes her allegations of pain in the years before and after that trip less

credible, even while conceding that a vacation is "not mutually exclusive with disability." (Tr. at 55). The ALJ also further failed to note that in the summer of 2008, when the trip was taken, the plaintiff still was working full time as a nurse at a hospital.

The ALJ also suggests that reports of varying pain levels during doctors' visits was inconsistent with Ms. Anderson's repeated reports that her pain was unchanged. It is clear, however, that a numerical pain assessment is asked of the patient as a "snapshot" of the pain being experienced at the time of the visit, while assessment of whether pain is getting better, getting worse, or remaining the same is a longitudinal view of the situation. It does not, therefore, stretch credibility for a patient to have good days and bad days, but to still have constant and unrelenting pain. Moreover, her credibility must be assessed in light of that fact that, while she did report varying levels of pain, she complained of the same neck and back pain for a dozen years or more, and all reports indicate that the pain worsened over the years.

The ALJ further faults the plaintiff for failing to pursue physical therapy, wear a cervical collar, and use a TENS unit as treatment when her doctor first suggested those options. It is clear from the record that, as time passed and pain worsened, the plaintiff sought many types of treatment, including the TENS unit. The ALJ never

asked the plaintiff why she did not pursue physical therapy early in her therapy, and her more recent records do not indicate that her doctors recommended or prescribed it after her condition worsened. This court does not agree that a plaintiff's failure to pursue every possible course of treatment necessarily establishes that allegations regarding the underlying condition are not credible. This plaintiff did eventually use the TENS unit, pursue chiropractic help, and undergo acupuncture. She also took medications as prescribed, underwent multiple procedures and injections, and showed up for doctor's appointments faithfully.

As for her daily activities, the plaintiff reported that she only occasionally took the couple's small dog for a "slow, short walk." Her testimony about housework indicates that she did only light chores, only when her pain level subsided, and that doing too much caused her extreme pain and resulted in the need for her to take lengthy periods of bed rest. Although her hobbies included reading, computer searches, and scrapbooking, the plaintiff made clear that she could pursue these activities—all of which are sedentary—only for short periods. She reported that looking down or holding a heavy book caused pain. The ALJ's characterization of Ms. Anderson's daily activities simply is not an accurate

reflection of the function reports of the plaintiff or the plaintiff's husband, or the testimony elicited at the hearing.

Finally, the ALJ appeared to have taken issue with the fact that the plaintiff completed her function report, and included with it a four-page supplement that described her car accident and resulting medical treatment. As the plaintiff's counsel pointed out, the plaintiff was required to complete the report, and the ALJ made no effort to ask the plaintiff whether she had gotten assistance, or how much time it took her to complete the report. Certainly, the court is hesitant to demean a claimant who puts forth substantial time and effort to provide the Commissioner with a full and detailed function report required by the Commissioner.

Having considered the ALJ's opinion and all of the evidence presented, the court finds that the ALJ's decision to discredit Ms. Anderson's allegations regarding her pain and her limitations was not based on substantial evidence. Instead, it is a "broad rejection" that ignores the full context of the plaintiff's testimony and the medical evidence. Accordingly, the matter is due to be remanded.

2. *Weight Given to Non-Treating Physician's Opinion*

The ALJ gave "partial weight" to the medical opinion provided by a state agency physician, Barry Schlossberg. The plaintiff asserts that the ALJ and the

Appeals Council erroneously "disregarded the testimony of the treating physicians in favor of a non-treating physician." (Doc. 16, p. 19). This argument fails to recognize that the opinion letters and assessments were not submitted until after the ALJ's decision was entered.

Plaintiff's counsel specifically urges that the letter from Dr. Pohl dated March 10, 2014, and the three assessment forms provided by Drs. Shikhtholth and Pohl, "provide evidence that Anderson meets the definition of disabled." *Id.* As discussed *infra*, however, the letter and assessment forms all were completed after the date of the ALJ's decision, and could not have been "disregarded," because they were not part of the record before the ALJ, and were not chronologically relevant to the Appeals Council's decision. While a treating physician's opinion is generally entitled to greater weight than a non-treating physician's pursuant to 20 C.F.R. § 404.1527(c)(2), there was no opinion evidence provided by the treating physicians, prior to the decision, aside from their treatment notes. And even though those notes describe Ms. Anderson's symptoms and treatments, they do not express any specific opinions about her ability to lift, sit, stand, or otherwise carry out the duties of gainful work, as did Dr. Schlossberg. The ALJ did not err in giving the

non-treating physician's opinion partial weight where she did not have under submission any contrary evidence from any treating physicians.

### 3. Evidence that Plaintiff Did Not Meet or Equal a Listing

The plaintiff asserts that the ALJ did not adequately consider whether the plaintiff met or equaled Listings 1.02, 1.04, 12.04, 14.02, and 14.09. In her opinion, the ALJ stated that, considered singly and in combinations, the impairments did not meet or equal a listing. (Tr. at 53). While the ALJ failed to articulate which listings were considered, the court does not find this omission, or her conclusory statement, to be inadequate under the law. The Eleventh Circuit Court of Appeals has determined that a similarly vague statement "shows that the ALJ considered the combined effects" of a claimant's impairments. *Hutchinson v. Astrue*, 408 Fed. Appx. 324, 327 (11th Cir. 2011). Accordingly, the court declines to remand on this ground, but notes that, when the plaintiff's credibility is reassessed, a new examination of the applicability of the listings may be required.

### 4. Appeals Council's Failure to Apply Correct Standard

The plaintiff's final argument is that the Appeals Council failed to apply the correct standard for review. "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence

renders the denial of benefits erroneous." *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1262 (11th Cir. 2007). However, the new evidence presented to the Appeals Council must be "chronologically relevant" to the claim, and therefore must relate "to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b); see also *Ingram,* 496 F.3d at 1262; *Hooie v. Social Security Administration,* 2012 WL 5426667 *5 (N.D. Ala. 2012). "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram,* 496 at 1261, 20 C.F.R. § 404.900(b). There is case law, however, recognizing that medical examinations occurring after the ALJ's decision may still be chronologically relevant, requiring consideration by the Appeals Council. *See Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1322–23 (11th Cir. 2015) ("[W]e have recognized that medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant."), *citing Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983) (considering a "treating physician's opinion" even though "he did not treat the claimant until after the relevant determination date"), *superseded on other grounds*

*by statute*, 42 U.S.C. § 423(d)(5); *see also Stone v. Soc. Sec. Admin.*, 658 F. App'x 551, 553 (11th Cir. 2016).

In this case, it is not entirely clear what the Appeals Council did. In its denial of review, the Appeals Council first acknowledged that it had received new records from the claimant's long-standing treating physicians, but then seemed to reject consideration of the evidence because it related to a later time. The Appeals Council wrote:

> We looked at the opinions that you submitted from Jay Pohl, M.D., dated March 20, 2014 and May 22, 2014 and from a medical professional whose name is illegible, dated April 4, 2014. We also looked at the records that you submitted from Huntsville Hospital Imaging Center, dated June 11, 2014; from Jay Pohl, M.D., dated December 10, 2013; and from Valley Pain Clinic/Ahmad Shikhtholth, M.D., dated October 2, 2013 through April 15, 2014. The Administrative Law Judge decided your case through September 20, 2013. *This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 20, 2013.*

(Tr. p. 2, Doc. 10-3) (Italics added). While the Appeals Council never expressly said that it refused to "consider" the new medical opinions, its assessment that because these opinions were "about a later time" and "[t]herefore [do] not affect the decision" of the ALJ, suggests that the Appeals Council made the legal decision to

refuse consideration of the new medical opinions.   That legal decision is subject to review *de novo*.   *See Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1321 (11th Cir. 2015).

Because the court has determined that this matter must be remanded to the ALJ for further consideration of the plaintiff's claim of disabling pain, it is not necessary for the court to address whether the Appeals Council erroneously concluded that these new medical opinions were not chronologically relevant.   On remand, the ALJ can include the new evidence in her reconsideration.

## Conclusion

Upon review of the administrative record, and considering all of Ms. Anderson's arguments, the undersigned Magistrate Judge finds the Commissioner's decision is not supported by substantial evidence; therefore, the decision is REVERSED and REMANDED to the ALJ for further consideration.   The court will enter a separate Order.

DATED the 19th day of May, 2017.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE